IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                                 :
LORETTA E. BOYLE,                :    HONORABLE JEROME B. SIMANDLE
                                 :
            Plaintiff,           :
                                 :    Civil No. 08-6276 (JBS/KMW)
       v.                        :
                                 :
VANGUARD CAR RENTAL USA, INC.,   :
                                 :    OPINION
            Defendant.           :
                                 :
_____:
```

APPEARANCES:

Thomas M. Barron, Esq.
BARRON & POSTERNOCK, LLP
400 N. Church Street
Suite 250
Moorestown, NJ 08057
     Attorney for Plaintiff

David W. Oppenheim, Esq.
Kevin M. Shelley, Esq.
KAUFMANN GILDIN ROBBINS & OPPENHEIM, LLP
777 Third Avenue
24th Floor
New York, NY 10017
     Attorneys for Defendant

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This matter is before the Court on Defendant's motion to dismiss or transfer venue [Docket Item 8], Plaintiff's motion to amend the complaint [Docket Item 23], and Plaintiff's motion for a continuance pursuant to Rule 56(f), Fed. R. Civ. P. [Docket Item 27].

The outcome of the motion to dismiss or transfer primarily turns on whether New Jersey's Franchise Practices Act (FPA), N.J.

Stat. Ann. § 56:10-5 (West 2001), applies to the business at issue in this case, a rental car agency.  Defendant, the putative franchisor, argues that Plaintiff's business does not qualify as a franchise as defined by the FPA because of a lack of "community of interest" between the two businesses.  (Def. Br. Supp. Motion to Dismiss, 17.)  Defendant also argues that even if Plaintiff's business is a franchise, it does not meet a statutory requirement of gross sales between franchisor and franchisee totaling $35,000.  (Id. at 12.)

Because Plaintiff's allegations about her commission are sufficient with respect to the $35,000 requirement, that part of Defendant's motion to dismiss will be denied.  The remaining argument on "community of interest" will be converted to a summary judgment motion and Plaintiff's request for a continuance will be granted to allow limited discovery before resolving it. Plaintiff's request to amend her complaint will be denied without prejudice to re-filing after the issue of FPA applicability is decided, by which time Plaintiff may also obtain discovery as to the identity of any new party to be joined.  Finally, the motion to transfer will be held in abeyance until the Court decides on summary judgment whether the FPA applies to the business in question.

## II. BACKGROUND

## A. Plaintiff's Initial Complaint and Defendant's Motion to Dismiss

2

According to the complaint, for over two years, Loretta E. Boyle, Plaintiff, operated a rental car agency pursuant to an Agency Operator agreement ("Agreement") with Defendant, Vanguard. (Compl. ¶ 8, 32.)  Prior to the agreement in question, Plaintiff had operated the rental agency since 1989, having purchased the business from her Mother who had operated it since 1970.  (Id. ¶ 5.)  The complaint alleges that Vanguard terminated the Agreement without good cause or 60 days notice in violation of the FPA (Count I).[1]  (Compl. ¶ 40.)  Plaintiff also argues that the Defendant failed to pay the lease on the rental facility as required by the Agreement (Count II).[2]  (Id. ¶ 45-49.)

Defendant moved to dismiss the complaint, arguing that Plaintiff's FPA claim fails to allege facts necessary to show that the Agreement was subject to the FPA.  (Def. Br. Supp. Motion to Dismiss, 12.)  In order for a business relationship to be protected by the FPA, it must be classified as a franchise as defined by the Act.  A franchise is "a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service

_____

[1]  Good cause is defined as "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise."  § 56:10-5.

[2]  The complaint also included a claim that Defendant breached the implied covenant of good faith and fair dealing in the course of terminating the franchise.  However, Plaintiff consented to withdraw this claim at oral argument and so the Court will order this claim dismissed.

mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise." § 56:10-3(a).  To gain the protection of the FPA, the franchise must also meet three additional requirements that go to the nature of the relationship between franchisor and franchisee.  § 56:10-4(a). The Act applies to:

> a franchise (1) the performance of which contemplates
> or requires the franchisee to establish or maintain a
> place of business within the State of New Jersey, (2)
> where gross sales of products or services between the
> franchisor and franchisee covered by such franchise
> shall have exceeded $35,000.00 for the 12 months next
> preceding the institution of suit pursuant to this act,
> and (3) where more than 20% of the franchisee's gross
> sales are intended to be or are derived from such
> franchise.

Id.

Defendant makes two claims about the application of the Act to Plaintiff:  First, that there was no "community of interest" between Plaintiff and Defendant as required by § 56:10-3(a), and second, that there was not "gross sales of products or services between franchisor and franchisee covered by such franchise exceeding $35,000 for the 12 months preceding institution of suit," as required by § 56:10-4(a)(2).  (Def. Br. Supp. Motion to Dismiss, 12.)

With regard to the breach of contract claim, Defendant argues that the claim should be transferred pursuant to a forum

selection clause in the Agreement.[3]  (Id. at 19.)  Defendant
concedes that if Count I remains viable, the case should not be
transferred.[4]

## B. Plaintiff's Motion for 56(f) Continuance

Plaintiff moved that the motion to dismiss be understood, at
least in part, as a motion for summary judgment because Defendant
attached and referenced an affidavit from the Vice President of
Vanguard, Jerry Smith.  Plaintiff asked for a 56(f) continuance
in order to further develop the factual record on the issue of
community of interest [Docket Item 27].  Among other things,
Plaintiff wishes to depose or otherwise solicit information from
Mr. Smith, whose affidavit contains claims that Defendant uses to

---

[3] The Agreement states both that any disputes "relating to
or arising out of" the Agreement must be litigated in Oklahoma or
the principal place of business of Vanguard (which Defendant
alleges is presently Missouri) and that the Agreement shall be
interpreted according to Oklahoma state law.  (Pl.'s Ex. P-1,
10).

[4] The New Jersey Supreme Court held in Kubis & Perszyk
Assoc. v. Sun Microsystems, Inc., 146 N.J. 176 (1996), that
"forum-selection clauses in contracts subject to the Franchise
Act . . . are presumptively invalid because they fundamentally
conflict with the basic legislative objectives of protecting
franchisees from the superior bargaining power of franchisors and
providing swift and effective judicial relief against franchisors
that violate the Act."  Id. at 192.

argue that a community of interest did not exist.  (Pl.'s Br.
Supp. Motion for Continuance, 11.)

Plaintiff does not claim to need more time for the other
issues raised in Defendant's motion, including the issue of the
satisfaction of the $35,000 requirement.  (Id. at 6).

## C. Plaintiff's Motion to Amend Complaint

Plaintiff has also moved to amend the complaint to add as a
defendant Enterprise Rent-A-Car Company, the alleged parent
corporation of Vanguard [Docket Item 23].  The proposed amended
complaint adds six more claims related to alleged efforts by
Vanguard and Enterprise to interfere with Plaintiff's contractual
rights and prospective economic gain.  (Proposed Amend. Compl. ¶¶
57-84.)  The claims include intentional interference with
contractual rights, intentional interference with prospective
economic gain, unfair competition, and conspiracy.  (Id.)
Plaintiff's proposed amended complaint does not alter the
allegations relevant to whether the FPA applies to Plaintiff's
business, though it may affect the Court's decision as to whether
to transfer the remaining claims if the FPA is found not to
apply.  Defendant opposes this motion to amend on the grounds
that it would be futile, arguing that none of the proposed new

claims would survive a motion to dismiss, in part because the
Court does not have personal jurisdiction over Enterprise Rent-A-
Car Company, and also because this is not the proper Enterprise
entity under the acquisition of Vanguard.  (Def.'s Br. Opp.
Motion to Amend, 5-21.)


**III. DISCUSSION**

**A. Motion to Dismiss**

i. Standard

     In its review of Defendants' motion to dismiss, the Court
must "accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff, and
determine whether, under any reasonable reading of the complaint,
the plaintiff may be entitled to relief."  Phillips v. County of
Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v.
Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).
Thus, "to survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129
S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, No. 07-4285,
2009 WL 2501662, at *3-4 (3d Cir. Aug. 18, 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1950.]  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id.  [] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.

Fowler, 2009 WL 2501662, at *4.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

ii.  Plaintiff's Pleadings Related to Her Commission Are
Sufficient to Establish that She Can Fulfill the $35,000
Requirement of the FPA

a. On Its Face, the FPA is Ambiguous As To Whether
Commissions Can Satisfy the $35,000 Requirement

The FPA applies to a franchise "where gross sales of

products or services between the franchisor and the franchisee

covered by such franchise shall have exceeded $35,000 for the 12

months next preceding the institution of suit pursuant to this

Act." § 56:10-4(a).  Plaintiff's complaint alleges that "[t]he

revenues from Plaintiff's business were in excess of $35,000.00

in the twelve month period preceding the termination of the

business by Vanguard."  (Comp. ¶ 24).  Plaintiff apparently

intended this sentence to refer to her commission from that

period rather than the overall revenue from the location's

rentals.  (Pl.'s Br. Opp. Motion to Dismiss, 21).  Plaintiff

argues that this commission payment from Vanguard satisfies the

$35,000 requirement.

Defendant claims that Vanguard's payment to Plaintiff in

excess of $35,000 for her commission is not the sale of a service

by Plaintiff to Vanguard and that Plaintiff did not provide any

services to Vanguard in exchange any payment by Vanguard to her.

(Def.'s Rep. Br. Supp. Motion to Dismiss, 4.)  However, all

parties agree that Plaintiff was paid in exchange for the

9

services she provided Vanguard in operating the putative

franchise location.  Defendant's argument, though not stated as

such, must be that this exchange of commission for Plaintiff's

services is not a "sale[] [of] services," as intended by the

language of the Act.[5]

The FPA does not define "gross sales" and there is no

binding precedent on this question.[6]  Defendant is able to cite

only a single case on the question of whether commissions paid to

Plaintiff can satisfy the $35,000 requirement.[7]  The case,

---

[5]  Defendant's attorney also made an alternative argument at
oral argument that even if Plaintiff's commission constituted a
sale of services, it was not "between the franchisor and the
franchisee" because Plaintiff was providing services to
customers, not Vanguard.  But Plaintiff alleges that Vanguard was
paying for her services, which were of immediate benefit to both
Vanguard and the customers.  It will frequently be the case in a
franchisee-franchisor relationship that the immediate beneficiary
of the goods or services purchased by franchisor or franchisee
includes a third party.  That is the point of the arrangement.
Thus, the commission is a sale of services if the payment of the
commission otherwise qualifies as a "sale."

[6]  Black's Law Dictionary defines the term as "Total sales
(esp. in retail) before deductions for returns and allowances."
Black's Law Dictionary, 1455 (9th ed. 2009).  *Sale* is defined as
"The transfer of property or title for a price."  Id. at 1454.
The term is rarely used to denote an exchange of services for a
price.  Since the object of "gross sales" in the statute includes
"services," some meaning must be given to the term that makes
sense of its object.

[7]  The three other cases cited by Defendant do not address
the question of what kind of transactions between franchisors and
franchisees can be used to satisfy the $35,000 requirement.
Dunkin' Donuts of America, Inc. v. Middletown Donut Corp., 100
N.J. 166, 495 A.2d 66 (1985) (holding the Act inapplicable

Business Incentives Co., Inc. v. Sony Corp. of America, 397 F.
Supp. 63 (S.D.N.Y. 1975), involves a plaintiff who functioned as
an independent salesman for Sony goods.  Id. at 65.  The
agreement between the plaintiff and Sony provided for a 5%
commission on all sales to third parties established by the
plaintiff.  The court held the Act inapplicable because, among
other reasons, "there were no sales between plaintiff and Sony .
. . .  The sales that were consummated were between Sony and
various third parties procured by plaintiff."  Id. at 68.

     While this reasoning in Business Incentives implicitly
suggests that commissions ought not be counted toward the
requirement, there is little to commend the case as persuasive
precedent.  The New York court offered no reasons for why the
commissions could not be used to satisfy this sales requirement,
nor did the court examine that issue explicitly (if it examined
it at all).  Such a deeper inquiry was unnecessary since the
court had several other independent grounds for finding the Act

---

because it was undisputed that the $35,000 requirement was
unmet); Learning Express, Inc. v. Ray-Matt Enterprises, Inc., 74
F. Supp. 2d 79 (D. Mass. 1999) (noting that the only allegation
of gross sales of products or services between the franchisor and
franchisee was the expenditure of $30,000 to purchase the
franchise rights); Windsor Card Shops, Inc. v. Hallmark Cards,
Inc., 957 F. Supp. 562 (D.N.J. 1997) ("Hallmark has not sold
anything to Windsor since 1994, the year in which Windsor
switched to an American Greetings store.").

inapplicable.  Id. at 67-68.  A New Jersey Appellate Division
opinion that is widely cited in interpreting the FPA describes
Business Incentives as holding that the plaintiff's arrangement
was not a franchise because it did not satisfy the licensing
requirement of the FPA:  "[P]laintiff [in Business Incentives]
necessarily had to use Sony's name in persuading potential
customers to place orders, but only in the same manner as would
any other sales representative.  This did not constitute a
license to use a trade name."  Neptune T.V. & Appliance Service,
Inc. v. Litton Microwave Cooking Products Div. Litton Sys., Inc.,
462 A.2d 595, 599 (N.J. Super. Ct. App. Div. 1983).[8]

    The regular payment of a previously bargained-for commission
for work performed is not the kind of thing normally denoted by
the word "sale."  One more readily envisions a sale of services
as, for example, franchisee's purchase of services from
franchisor, such as advertising.  But a reasonable reading of the
phrase "sale[] [of] services" includes the offering of labor in
exchange for regular compensation in the form of a commission.

---

    [8]  The court in Business Incentives was also without the
benefit of nearly 35 years of other New Jersey state courts'
interpretation of the Act, including the analysis in Tynan v.
General Motors Corp., 127 N.J. 269, 270 (1992), discussed below,
which explains the legislature's purpose behind the $35,000
requirement.

Because of the multiple reasonable readings of the phrase, the Court concludes that the $35,000 requirement is ambiguous as to whether it can include commissions.  When faced with interpreting the ambiguous language of a statute, "a court generally turns to the legislative history, statutory purpose, and related legislation." Brooks v. Odom, 150 N.J. 395, 401 (1997) (citations omitted).  An examination of the legislature's purpose settles this ambiguity in favor of Plaintiff.

b. The Legislature's Purpose for the $35,000 Requirement

The purpose of the FPA is to "level the playing field for New Jersey franchisees and prevent their exploitation by franchisors with superior economic resources." Kubis & Perszyk Assoc. v. Sun Microsystems, Inc., 146 N.J. 176, 195 (1996).  The scope of the FPA is circumscribed to affect only those franchise relationships vulnerable to such exploitation.  The New Jersey Supreme Court has adopted the reasoning from a New Jersey Superior Court's partial dissent, which noted that the purpose of the $35,000 limit is not to distinguish franchise from non-franchise, but instead "to restrict the application of the Act to franchises that [are] sufficiently consequential to the

13

franchisee to merit protection." <u>Tynan v. General Motors Corp.</u>, 127 N.J. 269, 270 (1992) (citing partial dissent in <u>Tynan v. General Motors Corp.</u>, 248 N.J. Super. 654 (App. Div. 1991)).

This understanding of the purpose of the provision is consistent with the structure, language and purpose of the statute. The Act distinguishes between franchises and non-franchises, but this is accomplished by the other requirements of the FPA (<u>e.g.</u>, requirement of license and community of interest). <u>See</u> § 56:10-3(a). The $35,000 requirement is applied to businesses that are already considered franchises under that definition. § 56:10-4(a) ("<u>a franchise</u> . . . where gross sales of products or services.") (emphasis added). Once a business relationship is understood as involving the unique franchisor-franchisee arrangement with which the legislature was concerned, the $35,000 requirement singles out for protection those franchises that are especially vulnerable to the disproportionate power of franchisors.

In that light, it becomes unnecessary to carefully parse the phrase "sale[] [of] services" to determine whether an exchange of commission for service constituted what the legislature intended by the use of the word "sale," because the legislature did not intend that the phrase do any work beyond establishing that the

franchisor has the requisite disproportionate power over the franchisee.  The Act establishes both a relative and an absolute benchmark to assess the vulnerability of the franchisee:  it applies only to franchises for whom more than 20% of gross sales are derived from the franchise and where the products or services exchanged between franchisor and franchisee exceed $35,000 in value.[9]

With this understanding of the $35,000 requirement, the fact that according to Plaintiff's allegations the commission constituted her exclusive form of revenue suggests the standard has served its purpose here.  Even a business so diverse that a mere 20% of gross sales are derived from the franchise is protected by the Act.  Plaintiff alleges her entire business was based on the franchise relationship.  If her allegations are true, it is hard to imagine a franchisee more reliant and thus more subject to exploitation than Plaintiff.

---

[9]   The $35,000 amount has not been amended since the Act was passed in 1971.  In today's dollars, the amount is between $148,000 and $448,000, depending on the method used to calculate the relative value.  See Samuel H. Williamson, "Six Ways to Compute the Relative Value of a U.S. Dollar Amount, 1774 to Present," MeasuringWorth, 2009, http://www.measuringworth.com/uscompare/.  Thus, in 1971, the $35,000 requirement would have been an even more significant hurdle, focusing the Act's strict protections on those businesses with much to lose if franchisors replaced them.

15

While this reading would mean that all paid labor is the "sale[] [of] service" — interpreting the scope of the FPA's protections to extend to any franchise in which the franchisor directly pays the franchisee for services in excess of $35,000 — the purpose of this part of the statute is merely to target for protection certain businesses that already otherwise qualify as franchises.  It is the definition of a franchise, with its hallmark of licensing the use of a trade name and characteristic community of interest, that must be carefully circumscribed in order to prevent application of the statute to businesses for whom it was not intended.

iii. Plaintiff Pleads Facts Sufficient to Show that She Can Fulfill the "Community of Interest" Requirement of the FPA

The other part of Defendant's motion to dismiss Count I of the complaint challenges the sufficiency of Plaintiff's allegations with respect to the issue of a "community of interest."  Part of the FPA's definition of franchise requires there to be an agreement "in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise."  § 56:10-3(a).

Like "gross sales," the FPA does not define "community of interest."  In order to determine the existence of a community of

16

interest, a relatively complex inquiry has been crafted that
probes the existence of behavior on the part of the putative
franchisee that demonstrates that she is the kind of entity the
legislature intended to protect.[10]  In <u>Neptune</u>, a case upon which
both parties heavily rely, the court states an oft-cited
description of the purpose and meaning of the community of
interest provision:

> [T]he community of interest signalling the franchise
> relationship does not imply a sharing of profits. . . .
> Rather it is based on the complex of mutual and
> continuing advantages which induced the franchisor to
> reach his ultimate consumer through entities other than
> his own which, although legally separate, are
> nevertheless economically dependent upon him. . . .
> Once a franchisee has succeeded by his efforts and
> capital in establishing a local reputation for the

---

[10]   In an attempt to avoid the complexity of the assessment
of community of interest, Defendant argues that because Vanguard
was interested in profits, while Plaintiff was merely interested
in revenues, they did not share the kind of communal interest
denoted by the "community of interest" phrase.  <u>See, e.g.,</u>
<u>Neptune T.V. & Appliance Service, Inc. v. Litton Microwave</u>
<u>Cooking Products Div. Litton Sys., Inc.</u>, 462 A.2d 595 (N.J.
Super. Ct. App. Div. 1983).  Even if a difference between an
interest in revenue and profit were sufficient to deny the
existence of a community of interest, there appears to be a
factual dispute over whether Plaintiff was permitted to make
business decisions according to her alleged different interest
(<u>e.g.</u>, rent cars at lower rates to increase overall revenue but
at a loss of profit to Vanguard).  If her functional interest was
identical with that of Vanguard, then Defendant's argument lacks
merit.  So to the extent that Defendant relies upon this as the
standard for a community of interest, the Court must deny a
motion to dismiss and allow further factual discovery before
assessing the issue on summary judgment.

> franchise name, he is vulnerable to termination of the
> franchise, forfeiture of the business good will and the
> inability to realize the benefits of his business by
> selling it to another prospective franchisee.  Thus,
> the reputation and good will of the network, created
> primarily by the efforts of each of the individual
> franchisees, passes back to the franchisor without
> compensation to the franchisee.

Neptune, 462 A.2d, at 600-01 (citations omitted).  See also Colt

Industries, Inc. v. Fidelco Pump & Compressor Corp., 700 F. Supp.

1330, 1332-33 (D.N.J. 1987), aff'd, 844 F.2d 117 (3d Cir. 1988).

In short, Neptune established that the purpose of the community

of interest requirement was to carry out the legislature's goal

of protecting those businesses subject to a certain kind of

exploitation:  the threat of loss of the fruits of their efforts

upon a franchisor's termination of their relationship.[11]

Neptune, 462 A.2d, at 600-01.

Neptune's explication of the purpose behind the community of

interest requirement has led to the development of a test that

assesses whether the putative franchisee has made franchise-

specific investments that might be wasted if the franchise is

---

[11]  Neptune lists a number of business relationships that do
not satisfy this standard.  These include: contractors performing
services for a publicly known company; specialty shops leasing
space within a publicly known department store; sales
representatives serving a brand-name company; and retail
distributors who also display the manufacturer's promotional
materials.  Id. at 601.

18

terminated.  The Third Circuit Court of Appeals has distilled Neptune and subsequent New Jersey Supreme Court rulings on community of interest into a two-part test:  "[I]n order to find a community of interest, two requirements must be met: (1) the distributor's investments must have been substantially franchise-specific . . . and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business."  Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc., 63 F.3d 262, 269-70 (3d Cir. 1995) (citations and internal quotations omitted); Emergency Accessories & Installation, Inc. v. Whelen Engineering Co., Inc., No. 09-2652, 2009 WL 1587888, at *3 (D.N.J. June 3, 2009).

In her complaint, Plaintiff alleges that she purchased the business from her mother in 1989, who had operated it since 1970. One of the characteristics that distinguishes a franchise from, for example, a sales representative serving a brand-name company, is that the business can be sold (perhaps after the franchisee has successfully recruited an active client base).[12]  See

_____

[12]   In this case, the Agreement allows assignment to a third party upon Defendant's consent. (Pl.'s Ex. P-1, 9.)  But even if it did not, the question is whether the nature of the business and the results of the putative franchisee's efforts are transferable, since one of the purposes of the FPA is to override contract terms written by the powerful franchisor.

19

<u>Neptune</u>, 462 A.2d at 601 ("[A franchisee] is vulnerable to termination of the franchise, forfeiture of the business good will and the <u>inability to realize the benefits of his business by selling it to another prospective franchisee</u>.") (emphasis added).

Plaintiff further alleges that she invested time and effort in furnishing customer service and thereby developing a customer base for Vanguard, pointing to the requirements of the Agreement attached to the complaint. (Compl. ¶ 16.)  Plaintiff expands upon this allegation in her responses to Defendant's motion, highlighting, for example, her efforts at learning individual Vanguard customer preferences to enhance customer goodwill. (Pl.'s Br. Opp. Motion to Dismiss, 20.)

Development of customer goodwill can be a franchise-specific investment sufficient to find a community of interest.  <u>See</u> <u>Cooper</u>, 63 F.3d, at 270; <u>Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery</u>, 179 F.R.D. 450, 472 (D.N.J. 1998).  Such investment includes investment of time and effort and does not require monetary investment, so long as the intangible skills, knowledge, or goodwill gained are franchise-specific.  <u>Cooper</u>, 63 F.3d, at 270.  Because Plaintiff alleges the kinds of franchise-specific investments that are sufficient for a finding of community of interest, Defendant's motion to dismiss must be denied.  There

remain questions as to the extent of Plaintiff's efforts and the degree of their franchise-specificity, but for the purposes of a motion to dismiss her allegations are sufficient.

## B. Converting Defendant's Motion to Dismiss into Motion for Summary Judgment and Plaintiff's Motion for 56(f) Furtherance

Defendant's motion to dismiss asks the Court to consider it as a motion for summary judgment if the Court finds it necessary to rely upon the attached affidavit from Jerry Smith, Vice President of Vanguard.  (Def. Br. Supp. Motion to Dismiss, 9.) The Smith Declaration challenges Plaintiff's assertions about the development of a customer base, among other things.  (Smith Aff. ¶¶ 24-25.) Since the Court has found Plaintiff's allegations sufficient to survive a motion to dismiss on the issue of community of interest, the Court will convert the motion to summary judgement so that it can consider the Smith Declaration. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Plaintiff has requested a continuance pursuant to 56(f) to develop facts and make the investigations necessary to respond to

the allegations made in the Smith Declaration.  This would also give the Plaintiff time to develop her own evidence on the subject of community of interest.  Requests for continuance pursuant to 56(f) are to be granted "almost as a matter of course" when "affidavits have been filed, setting forth specific reasons why the moving party's affidavits in support of a motion for summary judgment cannot be responded to, and the facts are in the possession of the moving party." <u>Mid-South Grizzlies v. NFL</u>, 720 F. 2d 772, 779-780 (3d Cir. 1983).  When, as here, the summary judgment in question is the result of a converted motion to dismiss, the Court should be lenient in granting the Plaintiff at least some limited initial discovery before summary judgment is decided.  In such circumstances, "the party making the Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid." <u>Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation</u>, 323 F.3d 767, 774 (9th Cir. 2003).  <u>See also</u> <u>Hellstrom v. U.S. Dep't of Veterans Affairs</u>, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

No discovery has yet been had, and some discovery is needed before the complex, fact-laden issue of community of interest can be properly resolved.  Defendant relies on the affidavit of Jerry Smith to argue that development of the customer base in the area resulted from Vanguard's efforts, not Plaintiff's.  If it is true that Plaintiff contributed little to the business's local reputation and good will among the client base, then this will cut against Plaintiff's allegations relating to the community of interest.  At a minimum, Plaintiff should have an opportunity to depose Mr. Smith on this issue and to develop her own facts on this point.

**C. Motion to Transfer**

Because of the holding in <u>Kubis & Perszyk Assoc. v. Sun Microsystems, Inc.</u>, 146 N.J. 176, 192 (1996) ("forum-selection clauses in contracts subject to the Franchise Act . . . are presumptively invalid"), both parties agree that the question of whether the FPA applies to the Agreement is crucial to the decision of whether to transfer the remaining contract claims. (Def.'s Mem. Supp. Motion to Dismiss, 19).  Therefore, the Court will hold the motion to transfer in abeyance until it decides the issue of FPA applicability.

**D. Motion to Amend the Complaint**

Federal Rule of Civil Procedure 15(a) provides that leave to amend the complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a).  The decision whether to grant or deny a motion to amend the complaint is within the discretion of the district court.  Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 144 n.10 (3d Cir. 2009).  A district court may deny leave to amend if the amendment would be futile  Id.  Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  Burlington, 114 F.3d at 1434.

At oral argument, Plaintiff conceded that the Court likely does not have personal jurisdiction over the proposed new Defendant named in the amended complaint.  This would make a large part of the amended complaint futile.  See Fed. R. Civ. P. 12(b)(2).  Plaintiff proposed that the motion to amend be held in abeyance until the Plaintiff has the opportunity to conduct discovery to ascertain the proper Enterprise Rent-a-Car-related corporate entity to name and correct the amended complaint, and until the Court decides the issue of FPA applicability which may

affect what state's laws will govern some of Plaintiff's claims.[13]

Since it appears that Plaintiff will need to substantially amend her amended complaint after discovery anyway, the Court will simply dismiss without prejudice the pending request to amend and grant Plaintiff the opportunity to re-formulate a correct complaint and to refile her motion to file an amended complaint after the Court determines the issue of FPA applicability.  This will give Plaintiff the opportunity to learn the identity of the Defendant she wishes to add and support her claims under the appropriate state's laws.  See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997) ("[J]urisdictional discovery should be allowed unless the plaintiff's claim is clearly frivolous.").

**E. Scope of Discovery**

---

[13]  Federal courts sitting in diversity apply the choice-of-law rules of the forum state.  See Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131 (3d Cir. 2002) (citing Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487 (1941)).  The proper forum (New Jersey, Oklahoma, or Missouri) for the proposed additional claims has not been decided.  Thus, it is not yet clear what conflict-of-law jurisprudence, and thus what state's substantive law, will govern the Agreement.  The parties have not yet had the opportunity to fully brief these issues under the different state laws that may apply (because they arose tangentially from the request to amend).

Both parties will be allowed to conduct discovery of facts relevant to the determination of whether a community of interest existed between Plaintiff and Defendant, as well as the identity of any additional parties that should be joined as defendants. Facts pertinent to "community of interest" include those that relate to the definitions of that term in such cases as Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc., 63 F.3d 262 (3d Cir. 1995), Neptune T.V. & Appliance Service, Inc. v. Litton Microwave Cooking Products Div. Litton Sys., Inc., 462 A.2d 595 (N.J. Super. Ct. App. Div. 1983), and Instructional Systems, Inc. v. Computer Curriculum Corp., 130 N.J. 324 (1992).

The parties will be required to make initial disclosures according to Federal Rule of Civil Procedure 26(a)(1)(A)(i) and (ii), except that the "discoverable information," Fed. R. Civ. P. 26(a)(1)(A)(i), and "claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(ii), in question shall be limited to the two issues of community of interest and identity of new defendants discussed above, unless counsel otherwise voluntarily agree upon more expansive initial disclosures.  These initial disclosures shall be made within 14 days from the date of this order.  After initial disclosures are made, the parties may use any of the methods for discovery described in Rules 27-36, as appropriate.

26

The period for completing this limited discovery will be 60 days from the date of this order.

While the purpose of this limited discovery is to uncover facts relevant to the issues of community of interest and the identity of new defendants, the Court will not impose strict limits on the scope of the discovery beyond those found in the Federal Rules of Civil Procedure.  Any discovery that might fall outside the boundaries of facts relevant to community of interest or personal jurisdiction over new defendants may still prove valuable to other parts of this case.  So long as the parties make good faith efforts to focus their inquiries on the above matters, the Court will not permit the denial of discovery requests merely because they arguably fall outside some rigidly defined scope of the community of interest or personal jurisdiction issues.

## IV. CONCLUSION

For the reasons given above, the Court will (a) deny Defendant's dismissal motion with respect to the $35,000 requirement of the FPA; (b) dismiss Count III of the complaint; (c) convert the remainder of Defendant's dismissal motion into a motion for summary judgment with respect to the "community of

interest" requirement of the FPA; (d) grant Plaintiff's motion to postpone this summary judgment motion for limited discovery under Rule 56(f) for sixty (60) days; (e) require each party to serve its initial disclosures pursuant to Rule 26(a)(1)(A)(I) & (ii) pertaining to the limited discovery issues within fourteen (14) days of the entry of the accompanying order; (f) dismiss Plaintiff's motion to file an amended complaint without prejudice to its renewal not later than twenty (20) days after the Court decides Defendant's converted motion for summary judgment; and (g) set a schedule for supplemental briefing upon the "community of interest" issue in the converted motion for summary judgment, all as set forth in the accompanying Order.


**September 30, 2009**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          U.S. District Judge


28